El Juez Asociado Señor Rebollo López
emitió la opinión del Tribunal.
Contra Wilfredo Montero Luciano se presentó una acusación ante el Tribunal de Primera Instancia, Sala Superior de Ponce, en la que se le imputó haber violado el Art. 7.02 de la Ley Núm. 22 de 7 de enero de 2000, según enmendada, 9 L.P.R.A. see. 5202, conocida como Ley de Vehículos y Tránsito de Puerto Rico, al conducir un vehículo de motor en una vía pública bajo los efectos de bebidas embriagantes.(1) Específicamente, se le imputó arrojar un .179% de alcohol en la prueba de aliento a la cual se sometió.
El día de la vista en su fondo del caso, el acusado hizo alegación de culpabilidad por el delito imputado. El foro primario aceptó la referida alegación. Conforme lo dispuesto en el Art. 7.07 de la Ley Núm. 22, ante, 9 L.P.R.A. see. 5207, dicho foro procedió a referir el caso a la Administración de Servicios de Salud Mental y contra la Adicción (ASSMCA), y le ordenó que rindiera el correspondiente informe presentencia.(2)
Según ordenado, ASSMCA rindió su informe. En éste se indicó que el acusado había sido convicto previamente por el delito de conducir en estado de embriaguez.(3)
En la vista para dictar sentencia, la defensa del acusado *367 alegó que la referida convicción anterior no había sido alegada por el Ministerio Público en la acusación. Por esta razón, solicitó que no fuera considerada para efectos de la sentencia.
En respuesta a lo anterior, el Ministerio Público hizo dos planteamientos. El primer planteamiento es que según el Art. 7.04(b)(4) de la Ley Núm. 22, ante, 9 L.P.R.A. see. 5204(b)(4), referente a las penas, la alegación de reincidencia no tenía que ser plasmada por el fiscal en la acusación, ya que ésta se podía evidenciar en el informe presentencia.(4)
El segundo planteamiento del fiscal fue a los efectos de que el Art. 7.04(b)(5) de la Ley Núm. 22, ante, 9 L.P.R.A. sec. 5204(b)(5), dispone que basta que se establezca el hecho de reincidencia mediante el informe presentencia o mediante el informe de antecedentes penales.(5)
En base a lo anteriormente expresado, el Ministerio Público sostuvo que la pena que debía imponérsele a Montero Luciano era aquella correspondiente a una segunda convicción, según el Art. 7.04(b)(2), 9 L.P.R.A. sec. 5204(b)(2), que dispone que por la segunda convicción la persona será sancionada con pena de multa no menor de quinientos dólares ni mayor de setecientos cincuenta dólares, y de cárcel por *368 un término de quince a treinta días, y pena de restitución de ser aplicable. Además, el referido estatuto dispone que se le suspenderá la licencia de conducir por un término de seis meses.
Luego de escuchar los planteamientos del Ministerio Fiscal, el foro primario determinó que la reincidencia tenía que ser alegada en la acusación. Procedió entonces dicho foro a dictar sentencia, conforme al Art. 704(b)(1), el cual establece la pena para una primera convicción, y condena al acusado al pago de una multa de $300, el pago de costas, más un arancel de $50. El referido foro también ordenó la suspensión de su licencia de conducir por un término de treinta días y a someterse al Programa de Rehabilitación de la Administración de Servicios de Salud Mental y contra la Adicción. Esto es, dicho foro no tomó en consideración la alegación de reincidencia presentada en el informe presentencia.
Inconforme con la sentencia dictada, el Ministerio Público presentó una moción de corrección de sentencia ilegal a tenor con la Regla 185 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. En síntesis, planteó que la sentencia del foro primario era ilegal y errónea por no haber sido dictada conforme al Art. 7.04(b)(2) y (b)(4), ante, los cuales establecen la pena correspondiente en casos de una segunda convicción.(6) En otras palabras, el fiscal alegó que en la medida en que la sentencia dictada por el foro de instancia no tomaba en cuenta la reincidencia del acusado, habiéndose establecido este hecho claramente mediante el informe presentencia, era una sentencia ilegal.
Examinada la referida moción, el foro primario la declaró “no ha lugar”. El Procurador General acudió ante el *369 Tribunal de Apelaciones mediante un recurso de certiorari, en revisión de la orden del tribunal de instancia que negó la corrección de la sentencia ilegal. En el recurso presentado, el Procurador reprodujo, en síntesis, los planteamientos hechos por el fiscal en su moción de corrección de sentencia ilegal.
En la sentencia que dictó a esos efectos, el foro intermedio apelativo concluyó que la referida Ley Núm. 22 era clara al disponer que en estos casos no era necesario alegar la reincidencia en la denuncia o acusación, y que bastaba que se estableciera la reincidencia en el informe presentencia o mediante el certificado de antecedentes penales. Determinó que la pena correcta que se debía imponer a Montero Luciano era la pena establecida en el Art. 7.04(b)(2) y (b)(4), ante. Según dicho foro, el Tribunal Supremo de Estados Unidos, en el caso Almendarez-Torres v. United States, 523 U.S. 224 (1998), estableció que no violaba la cláusula constitucional de debido proceso de ley el hecho que la reincidencia no tuviese que ser alegada en el pliego acusatorio por no ser ésta un elemento constitutivo del delito.
Por consiguiente, el foro apelativo intermedio resolvió que el foro primario había abusado de su discreción al no tomar en consideración la convicción previa de Montero Luciano al momento de dictar sentencia. Resolvió, además, que dicha sentencia era ilegal por su inobservancia del texto claro de la ley. En fin, el referido foro revocó la sentencia dictada por el Tribunal de Primera Instancia y devolvió el caso a este foro para que sentenciara a Montero Luciano nuevamente.
Inconforme, Montero Luciano acudió ante este Tribunal mediante un recurso de certiorari. En síntesis, alega que el foro intermedio apelativo incidió al resolver aplicando el Art. 7.04 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. see. 5204, el cual constituye una disposición legal injusta e inconstitucional por violar la cláusula de de *370 bido proceso de ley, al negarle una notificación adecuada de los cargos en su contra.(7)
Expedimos el recurso. Contando con la comparecencia de las partes, procedemos a resolver.
I
La cláusula de debido proceso de ley, consagrada en la See. 7 del Art. II de nuestra Constitución(8) ha sido conocida como la disposición matriz de la garantía de los derechos individuales ante la intervención injustificada del Estado con el ciudadano. Pueblo v. Vega, 148 D.P.R. 980 (1999). Dicha cláusula abarca dos dimensiones: la sustantiva y la procesal.
La vertiente sustantiva protege los derechos y las libertades que le concede la Constitución de Puerto Rico y la de Estados Unidos a los ciudadanos frente a la formulación de política pública por la vía legislativa o a través de reglamentación aprobada por las agencias del Poder *371 Ejecutivo. Rafael Rosario Assoc, v. Depto. Familia, 157 D.P.R. 306 (2002). Según el debido proceso sustantivo, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o de libertad. íd.
Por su parte, la vertiente procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo sólo ocurra mediante un procedimiento justo y equitativo. Rafael Rosario Assoc. v. Depto. Familia, ante; U. Ind. Emp. A.E.P. v. A.E.P., 146 D.P.R. 611 (1998); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881 (1993).
Esta protección que ofrece el debido proceso de ley, en su vertiente procesal, se activa cuando existe un interés individual de libertad o de propiedad. U. Ind. Emp. A.E.P. v. A.E.P., ante; Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265 (1987).
Al examinar la validez constitucional de una ley por una alegada violación al debido proceso en su vertiente procesal, y una vez se cumpla con la existencia de un interés propietario o de libertad, es preciso determinar cuál es el procedimiento exigido. Rivera Santiago v. Srio. de Hacienda, ante; U. Ind. Emp. A.E.P. v. A.E.P., ante. Si bien la característica medular es que el procedimiento debe ser justo, en la jurisprudencia normativa se han identificado irnos componentes básicos del debido procedimiento de ley, tales como una notificación adecuada y la oportunidad de ser oído y de defenderse, el derecho a contrainterrogar testigos y a examinar la evidencia presentada en su contra, la asistencia de abogado y que la decisión se base en evidencia que conste en el expediente. Véanse: Rivera Rodríguez *372 & Co. v. Lee Stowell, etc., ante; U. Ind. Emp. A.E.P. v. A.E.P., ante.
A. Sabido es que en nuestro ordenamiento procesal penal la protección a la debida notificación al acusado de los cargos presentados en su contra tiene rango constitucional. Tal protección se desprende de la cláusula de debido proceso de ley y de la Sec. 11 del Art. II de nuestra Constitución, que dispone, en lo aquí pertinente:
En todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma, a carearse con los testigos de cargo, a obtener la comparecencia compulsoria de testigos a su favor, a tener asistencia de abogado, y a gozar de la presunción de inocencia. (Énfasis suplido.) Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 327.
El debido proceso de ley exige que el acusado esté adecuadamente informado de la naturaleza y extensión del delito que le ha sido imputado. Pueblo v. González Olivencia, 116 D.P.R. 614 (1985). El Ministerio Público cumple con este deber de información por medio de la acusación o denuncia. A esos efectos, la Regla 35(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone que cuando se imputa la comisión de un delito específico, la acusación o denuncia debe incluir una exposición de todos los hechos constitutivos de ese delito.(9) Pueblo v. Calviño Cereijo, 110 D.P.R. *373 691, 693 (1981); Pueblo v. Santiago Cedeño, 106 D.P.R. 663, 666 (1978).
Este requisito, tanto constitucional como estatutario, se cumple con una acusación o denuncia que incluya una exposición de los hechos esenciales constitutivos del delito, redactada en lenguaje sencillo, claro y conciso para que pueda entenderla cualquier persona de inteligencia común. Pueblo v. Flores Betancourt, 124 D.P.R. 867 (1989). A esos efectos, hemos expresado que para cumplir con lo anterior, no se le exige al Ministerio Público ningún lenguaje estereotipado, técnico o talismánico en su redacción ni el uso estricto de las palabras dispuestas en el estatuto. Pueblo v. Calviño Cereijo, ante. Sólo se le exige que el contenido, no el epígrafe, de la acusación o denuncia exponga todos los hechos constitutivos del tipo delictivo.
Así, la función de la acusación o denuncia es crucial para el acusado pues, por virtud de ella, el acusado conoce los hechos que se le imputan, de suerte que pueda preparar su defensa conforme a ellos. Pueblo v. Ríos Alonso, 156 D.P.R. 428 (2002); Pueblo v. Meléndez Cartagena, 106 D.P.R. 338 (1977).
B. La importancia de una adecuada notificación tiene efectos trascendentales en todo procedimiento criminal llevado por el Estado contra un individuo. Ejemplo de ello es la situación en que un acusado hace alegación de culpabilidad. En dicha instancia, la “acusación” o “denuncia” cobra particular importancia, ya que es en virtud de lo que ésta expone que el acusado se declara culpable.
Sabido es que según nuestro ordenamiento procesal criminal una persona acusada de cometer un delito, de ordinario, sólo puede hacer una de dos alegaciones: culpable o no culpable. Una alegación de culpabilidad constituye una renuncia de los derechos constitucionales o estatutarios que protegen a los acusados, entre los cuales se encuentran: el derecho a que se establezca su culpabilidad *374 más allá de duda razonable; el derecho a un juicio justo, imparcial y público; el derecho a ser juzgado ante un juez o Jurado, y el derecho a presentar evidencia a su favor y a rebatir la prueba presentada en su contra. Pueblo v. Santiago Agricourt, 147 D.P.R. 179, 192 esc. 10 (1998); Pueblo v. Figueroa García, 129 D.P.R. 798 (1992); Pueblo v. Torres Nieves, 105 D.P.R. 340, 350 (1976); Díaz Díaz v. Alcaide, 101 D.P.R. 846, 854 (1973).
Por causa de los derechos fundamentales garantizados por la Constitución y las leyes, y que se renuncian cuando un acusado se declara culpable, el procedimiento debe ser bien riguroso y debe estar rodeado de todas las garantías posibles. Por tal razón, la Regla 70 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece que para aceptar una alegación de culpabilidad, el tribunal tiene que determinar, prioritariamente, si ésta se efectúa “voluntariamente, con conocimiento de la naturaleza del delito imputado y de las consecuencias de dicha alegación”. (Enfasis nuestro.)
En ese sentido, este Tribunal ha señalado que para poder aceptar una alegación de culpabilidad, el magistrado debe cerciorarse de que la renuncia a las garantías procesales que conlleva tal alegación sea “expresa, personal, voluntaria e inteligente” —Pueblo v. Torres Nieves, ante, pág. 350— y con conocimiento de los derechos a los que renuncia y de las consecuencias de la alegación. Véase Díaz Díaz v. Alcaide, ante, pág. 854.
Específicamente, en Díaz Díaz v. Alcaide, ante, sostuvimos la importancia de que, al momento de determinar si la declaración de culpabilidad fue voluntaria y hecha de forma inteligente, el juez se cerciorara de que el acusado fuera consciente de los hechos que se le imputaban, entre ellos, informarle de la pena que conllevaba el delito por el cual se declaraba culpable, haciéndole saber la mínima y la máxima. Id., pág. 857.
*375 C. Por otro lado, en un proceso criminal, el acusado solamente puede ser juzgado por el delito que se le impute en la acusación. Conforme a ello, la Regla 48 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece que una acusación o denuncia no deberá contener alegación alguna de convicciones anteriores del acusado, a menos que una alegación en tal sentido sea necesaria para imputar la comisión de un delito o para alegar la condición de reincidente, de subsiguiente o de delincuencia habitual en relación con el acusado.(10)

La mencionada disposición reglamentaria establece, expresamente, la obligación del Ministerio Público de alegar las convicciones anteriores del acusado en la acusación o denuncia si pretende establecer la condición de reincidente y que se le imponga una pena mayor al acusado de resultar convicto. Dicha disposición forma parte de la protección constitucional del acusado de estar debidamente informado de los cargos en su contra, y con la obligación del fiscal de probar todos los elementos de un delito más allá de duda razonable.

Cuando en una acusación se alegan, para efectos de reincidencia, convicciones previas del acusado, éste tiene dos opciones: aceptar las convicciones anteriores o negarlas. Cada una de estas instancias tiene sus consecuencias importantes en el ordenamiento penal. La primera, si el acusado acepta las convicciones previas, el fiscal no puede mencionarlas durante el juicio. La admisión de la convicción previa de parte del acusado releva al fiscal de probar la comisión de los delitos anteriores alegados en la acusación. La segunda, si el acusado no las acepta, el *376 fiscal está en la obligación de probar las convicciones anteriores durante el juicio, como cualquier otro elemento del delito. Véase Pueblo v. García García, 98 D.P.R. 827 (1970).(11)
En resumen, vemos que nuestro ordenamiento procesal penal le brinda al acusado ciertas protecciones —algunas incorporadas por acción legislativa mediante las Reglas de Procediendo Criminal; otras garantizadas por la Constitución— que forman parte del debido proceso de ley. Entre éstas, y como vimos, una adecuada notificación de los car-gos por los cuales se le acusa, el conocimiento de las consecuencias que conlleva una alegación de culpabilidad y la garantía de que sus convicciones anteriores, como regla general, no serán alegadas en la acusación a menos que sean necesarias para sostener la condición de reincidente. Reglas 35(c), 70 y 48 de Procedimiento Criminal, ante, respectivamente.
II
Con este trasfondo en mente, pasemos a analizar las disposiciones de la Ley de Vehículos y Tránsito de Puerto Rico aquí en controversia.
A. Conducir bajo los efectos de bebidas embriagantes constituye un delito menos grave, según dispuesto por el Art. 7.04(a) de la Ley de Vehículos y Tránsito de Puerto Rico, ante. El mencionado cuerpo reglamentario fue enmendado recientemente por la Ley Núm. 132 de 3 de junio de 2004. Entre las enmiendas introducidas por la referida ley se encuentran aquellas relativas a las penalidades *377 por violaciones al estatuto, en específico, aquellas relativas al aspecto de la reincidencia.
En cuanto a dicho aspecto, la disposición legal anteriormente expuesta —el referido Art. 7.04(b)(4) y (b)(5)— contiene un lenguaje claro y específico. Esto es, la Ley de Vehículos y Tránsito de Puerto Rico, según enmendada, establece mediante estos dos incisos que para evidenciar la condición de reincidente del acusado, el fiscal no tiene que alegarlo en la denuncia, sino que es suficiente que este hecho se evidencie en el informe presentencia. Además, se establece que para que el tribunal pueda imponer las penas por reincidencia no será necesario que se alegue en la denuncia o en la acusación, sino que basta con que se establezca este hecho mediante el informe presentencia o mediante el certificado de antecedentes penales. Ello fue implantado por el legislador por medio de una enmienda específica a la Ley Núm. 22, ante.
Por otro lado, es de notar que el Art. 7.07(a) de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. see. 5207(a), establece que el informe presentencia que ASS-MCA deberá rendir al tribunal incluirá los antecedentes penales e historial de la persona convicta en relación con el uso de bebidas embriagantes o de drogas narcóticas, marihuana o sustancias estimulantes o deprimentes, que le permita determinar si dicha persona se beneficiaría del programa de rehabilitación establecido y aprobado por ASSMCA en coordinación con el Departamento de Transportación y Obras Públicas. En el informe se hará constar si el convicto es reincidente.(12)

En consecuencia, no se requiere mayor análisis para determinar que el Art. 7.04, ante, en cuanto exime al 
*378
fiscal de alegar la reincidencia en la denuncia, es contradictorio a las disposiciones de la Regla 48 de Procedimiento Criminal, ante. La interrogante, en consecuencia, es si dicho artículo viola la cláusula de debido proceso de ley de la Constitución.

B. Nuestra jurisprudencia ha analizado la validez constitucional de estatutos que imponen penas mayores a aquellas personas que han sido convictas por delitos en más de una ocasión. Al sostener la constitucionalidad de estos estatutos, hemos realizado un análisis de los propósitos de la Asamblea Legislativa al imponer unas penalidades mayores a los delincuentes habituales. En Pueblo v. Reyes Morán, 123 D.P.R. 786 (1989), este Tribunal analizó los propósitos de los estatutos sobre delincuencia habitual de varias jurisdicciones estatales y expresó que son, en síntesis: disuadir a posibles delincuentes reincidentes, penalizar la repetición de conducta delictiva y castigar de una manera más severa a aquellos que con su conducta delictiva repetitiva han demostrado que no están' capacitados para adaptarse a las reglas sociales establecidas por los estatutos penales.(13) En dichas jurisdicciones se sostuvo que los estados tenían un interés válido en penalizar a aquellas personas que demostraran, a través de una conducta delictiva repetida, una persistente tendencia a delinquir y a comportarse contrario a las normas de convivencia social. En fin, en dichos casos se determinó que los estatutos que imponían penas más severas a los delincuentes habituales sobrevivían todo tipo de ataque constitucional según las cláusulas de debido proceso, igual protección de las leyes, aplicación retroactiva de las leyes, castigos crueles e inusitados, doble exposición y privilegios en inmunidades. Rummel v. Estelle, 445 U.S. 263 (1980); Oyler v. Boles, 368 U.S. 448 (1962); Gryger v. Burke, 334 U.S. 728 (1948), entre otros.
*379 En el caso Pueblo v. Reyes Morán, ante,(14) resolvimos que la imposición de una penalidad adicional, para quien hubiese sido convicto en más de dos ocasiones, era parte de las prerrogativas constitucionales de la Asamblea Legislativa, y que ésta podía legislar para imponer a los delincuentes habituales una penalidad mayor dentro de la autoridad que constitucionalmente le asistía para imponer castigos.(15)
La controversia específica ante nuestra consideración no ha sido objeto de análisis por este Tribunal. Se circunscribe a determinar si viola la cláusula de debido proceso el hecho de que la reincidencia no sea alegada en la denuncia o acusación. Entendemos procedente examinar la jurisprudencia del Tribunal Supremo de Estados Unidos sobre este tema.
Dicho Tribunal atendió y resolvió una controversia similar en el caso Almendarez-Torres v. United States, ante. Allí se analizó un estatuto que disponía una pena máxima de veinte años en el caso de un extranjero, que regresara a Estados Unidos luego de haber sido deportado previamente, y el juez determinara que esa deportación previa se debió a una convicción por un delito agravado. 18 U.S.C.A. sec. 1326(b)(2).
El acusado alegó en dicho caso que en la acusación presentada en su contra no se había hecho mención sobre alegadas convicciones anteriores y que, en consecuencia, el tribunal no podía sentenciarlo imponiendo una pena más alta de la máxima permitida para acusados sin convicciones previas. Al examinar el planteamiento del acusado, el máximo foro federal formuló la interrogante en términos *380 de si la disposición penal en controversia definía la reincidencia como un delito separado o, únicamente, como un factor a considerar al momento de dictar sentencia e imponer la pena.
Al hacer el análisis anterior, el Tribunal partió de la normativa de que una acusación tiene que exponer todos los elementos del delito que se le imputa al acusado. A diferencia de lo anterior, expresó el referido Foro que la acusación no tiene que exponer todos los factores que sean relevantes únicamente para efectos de dictar la sentencia, de encontrarse culpable al acusado. Por ello, el Tribunal razonó que si el estatuto en controversia definía la convicción anterior como un delito nuevo y separado, éste tenía que ser alegado en la acusación. Por el contrario, de tratarse sólo de un factor que agravaba la pena, éste no tenía que ser alegado en la acusación. El Tribunal resolvió el caso conforme esta última posición, es decir, que la reincidencia no era necesaria para probar el delito imputado y que, por lo tanto, en estos casos, no tenía que alegarse la reincidencia en la acusación, ya que no se relacionaba con la comisión del delito, sino únicamente con la pena.(16)
En una decisión posterior, el Supremo federal reiteró la distinción entre “hechos que son elementos del delito” y “hechos relevantes únicamente para dictar sentencia”. En Castillo v. United States, 530 U.S. 120 (2000), el Tribunal expresó que lo importante en dicho análisis era si el estatuto penal, en el que el juez se amparaba para imponer una pena más alta, definía un delito separado (si se refería a un delito u ofensa) o simplemente lo autorizaba a aumentar la pena. El Tribunal determinó que el análisis anterior requería un examen del estatuto, es decir, de su lenguaje *381 específico, para determinar si constituía un delito separado.
Precisa señalar que en este caso, al tratarse de un delito para el cual se proveía un juicio por jurado, el Tribunal expresó que en casos donde la determinación de un hecho particular fuera esencial para la imposición de la pena, este hecho tenía que ser determinado por el Jurado, ya que el estándar de “prueba en esos casos era el de prueba más allá de duda razonable”, un estándar mucho más riguroso que el que utilizaría el juez para determinar el referido hecho, el cual sería “preponderancia de la prueba”. A tales efectos, dicho Foro expresó, en lo pertinente, que:
There is no reason to think that Congress would have wanted a judges view to prevail in a case of so direct a factual conflict, particularly when the sentencing judge applies a lower standard of proof and when 25 additional years in prison are at stake. Castillo v. United States, ante, pág. 128.
El Tribunal resolvió que el estatuto en controversia, al establecer los factores que el juez podía tomar en consideración para dictar la sentencia, se refería a un elemento de un delito separado y agravado. Por lo cual, se trataba de la instancia de un “separate crime”, según Almendarez-Torres v. United States, ante. Vemos, en consecuencia, que aun cuando se reiteró la antes mencionada distinción entre “hechos que son elementos del delito” y “hechos relevantes únicamente para dictar sentencia”, el Tribunal Supremo federal resolvió a favor de que los hechos que tendiesen a aumentar la pena, fuesen considerados por el Jurado, y no determinados por el juez.
Aun cuando ninguno de estos casos ha sido expresamente revocado, unas decisiones posteriores del Tribunal Supremo revelan un alejamiento sustancial de los precedentes de Almendarez-Torres v. United States, ante, y Castillo v. United States, ante, y un abandono de la distinción “elementos del delito” versus “elementos para dictar sentencia”. En dichas decisiones posteriores se ha adoptado *382 la norma que cualquier hecho que tienda a aumentar una sentencia tenga que ser alegado en la acusación y probado por el Ministerio Público más allá de duda razonable.
El primer ejemplo de ello es el caso Apprendi v. New Jersey, 530 U.S. 466 (2000). Aquí la controversia giró en torno a si violaba la cluásula de debido proceso de ley de la Decimocuarta Enmienda de la Constitución de Estados Unidos un estatuto del estado de Nueva Jersey que permitía que un juez, al momento de dictar sentencia, utilizara factores que desfilaron durante el juicio, como elementos que autorizaran un aumento en la pena máxima de un delito, en vez que dichos factores fueran considerados por el Jurado utilizando el criterio de “prueba más allá de duda razonable”.(17)
En dicho caso se trataba de un agravante estatutario, de “actos motivados con la intención de intimidar cierto grupo”, el cual no fue alegado por el ministerio público en la acusación. El acusado había realizado una alegación preacordada con el Ministerio Público declarándose culpable, entre otros cargos, del delito en segundo grado de utilizar un arma de fuego con propósitos ilegales. Para este delito la pena era de entre un mínimo de cinco años y un máximo de diez años. Por no estar alegado en la acusación, el acusado no se declaró culpable del agravante de “actos motivados con la intención de intimidar cierto grupo”. Sin embargo, al momento de dictar sentencia, y tal y como lo permitía el estatuto, el juez tomó en consideración que el acusado había realizado el delito motivado por prejuicios raciales (“hate crime”). Por consiguiente, condenó al acu *383 sado a doce años de prisión por ese cargo, una pena mayor que la establecida para el delito sin el agravante.
En este caso, el Tribunal Supremo analizó la interrogante en forma distinta que en Almendarez-Torres v. United States, ante. La decisión del Tribunal Supremo de Estados Unidos en Apprendi v. New Jersey, ante, fue a los efectos de que, cónsono con la historia de la jurisprudencia penal y la importancia del “jury trial”, todo elemento que pudiese agravar la pena del acusado tenía que pasar por la consideración del Jurado.
Hay que señalar que en Apprendi v. New Jersey, ante, la decisión de Almendarez-Torres v. United States, ante, no fue revocada. Más bien, se expresó que Almendarez, ante, era una decisión excepcional que se apartaba de la práctica pasada de los tribunales.(18) Se expresó, además, que las protecciones del debido proceso y del derecho a juicio por jurado se extendían a determinaciones que no se relacionan con la “culpabilidad” del acusado, sino que se relacionaran con la extensión de su sentencia. Por esta razón, en la decisión Apprendi, el Tribunal expuso que aunque la decisión de Almendarez debía limitarse exclusivamente a casos sobre reincidencia, “it is arguable that Almendarez-Torres was incorrectly decided and that a logical application of our reasoning today should apply if the recidivist issue were contested ...” (Enfasis nuestro y escolio omitido.) Apprendi v. New Jersey, ante, págs. 489-490.(19)
Las decisiones posteriores del Tribunal Supremo de Estados Unidos relativas a este tema han seguido reafirmando la decisión de Apprendi v. New Jersey, ante, en cuanto a que factores que aumenten la pena a la que pueda *384 estar expuesto un acusado deben ser considerados por el jurado. En Blakely v. Washington, 542 U.S. 296 (2004), el acusado formuló su alegación a los efectos de que el hecho que el juez, al momento de dictar sentencia, pudiera tomar en consideración un hecho que no fue admitido por él ni determinado como probado por un Jurado, violaba su derecho a juicio por jurado protegido por la Sexta Enmienda de la Constitución federal.(20)
Al analizar el planteamiento del acusado y resolver dicho caso, el Tribunal Supremo reafirmó lo ya resuelto en Apprendi v. New Jersey, ante. En ese sentido la discusión se centró en hasta qué punto podía una Legislatura otorgarle poder al juez de aumentar la pena máxima dispuesta para un delito en particular sin que dicha acción violara el derecho a juicio por jurado. El Tribunal acogió el argumento del acusado y resolvió que, en efecto, el derecho a juicio por jurado protegido por la Sexta Enmienda requería que cualquier factor distinto a una convicción previa que pudiera agravar la pena máxima estatutaria de un delito, tenía que ser sometido al Jurado y probado más allá de duda razonable.
Aun cuando las anteriores decisiones del Tribunal Supremo de Estados Unidos parezcan un tanto contradictorias, lo cierto es que la posición relativa a la distinción entre “factores que constituyen elementos del delito” y “factores relevantes al momento de dictar sentencia para aumentar la pena”, ha perdido vitalidad a partir de Apprendi v. New Jersey, ante, y que la norma federal prevaleciente es que los factores que expongan al acusado a una pena mayor tienen que ser alegados en la acusación y probados por el Ministerio Público más allá de duda razonable.
*385 III
Examinados los preceptos constitucionales y las reglas procesales pertinentes, además de la jurisprudencia federal relevante, atendemos el planteamiento constitucional del peticionario Montero Luciano.
En esencia, el acusado plantea que el citado Art. 7.04 viola la cláusula de debido proceso de ley al relevar al Ministerio Público de alegar la reincidencia en la acusación. Sostiene que el efecto de dicha disposición es que permite que el Ministerio Público alegue la reincidencia en un momento posterior a la declaración de culpabilidad del acusado, eliminando el derecho del acusado a ser notificado de la probable pena que habrá de recibir. De este modo, plan-tea que el acusado que hace alegación de culpabilidad, esperando recibir una pena determinada, queda expuesto a recibir una pena mayor. En consecuencia, la defensa, al no conocer los propósitos del Estado contra el acusado, no podría planificar una estrategia adecuada ni orientar adecuadamente a su cliente.
En virtud de estos planteamientos, precisa que resolvamos si el hecho de que la condición de reincidente no tenga que ser alegada en una acusación instada en virtud de la Ley de Vehículos y Tránsito de Puerto Rico es inconstitucional por violar la cláusula de debido proceso de ley.
Según señalamos al comienzo, la cláusula de debido proceso de ley, en sus vertientes procesal y sustantiva, requieren que una ley que ha sido impugnada por violar dicha cláusula sea examinada conforme el análisis siguiente: según la vertiente sustantiva, que el Estado no puede aprobar leyes que afecten de manera arbitraria, irrazonable o caprichosa los intereses de propiedad o de libertad del individuo, de manera que la ley será examinada con el propósito de proteger los derechos fundamentales de las personas; por otro lado, según la vertiente procesal, la ley será examinada tomando en cuenta que la interferencia del Es *386 tado con los intereses de libertad y de propiedad se haga mediante un procedimiento justo y equitativo. En dicho análisis lo que hay que determinar es cuál es el debido proceso exigido. Ambos análisis requieren examinar los propósitos del Estado al aprobar la legislación en cuestión.
Un examen de la declaración de propósitos del antes mencionado Art. 7.01 y de la Exposición de Motivos de la Ley de Vehículos y Tránsito de Puerto Rico no arroja luz en cuanto al propósito de la Asamblea Legislativa de eximir al Ministerio Público del requisito de alegar la reincidencia en la acusación.(21) Estas disposiciones sólo nos exponen, de manera general, el propósito de la ley de penalizar y de servir de disuasivo a los conductores ebrios. En ausencia de alguna discusión en cuanto a este aspecto, estamos impedidos de determinar cuáles fueron las motivaciones de la Legislatura al eximir al Ministerio Público de este requisito.
Atendido el propósito general de la Legislatura al aprobar la referida Ley de Vehículos y Tránsito de Puerto Rico, esto es, el de velar por la seguridad pública en las carreteras y lograr el control del conductor ebrio fortaleciendo las sanciones aplicables a esta ley, creemos que el propósito no justifica la interferencia con el derecho fundamental de libertad del peticionario Montero Luciano; esto es, éste no justifica que a un acusado no se le notifique en la acusación que sus convicciones anteriores serán posteriormente alegadas con el propósito de que se le imponga una pena mayor al ser sentenciado.
En el presente caso, el acusado hizo alegación de culpabilidad posiblemente tomando en consideración que el fiscal no alegaba la reincidencia en la denuncia, vislumbrando de este modo que la pena que le sería impuesta era *387 la propia a una primera convicción.(22) Por consiguiente, en este caso, el acusado no aceptó la reincidencia ni se declaró culpable del delito de conducir en estado de embriaguez con pleno conocimiento de la pena al cual sería expuesto.
Los hechos particulares de este caso reflejan la situación en que el juez utilizó unos factores que no habían sido alegados en la acusación ni aceptados por el acusado para imponer la sentencia. Esto tiene un efecto significativo, particularmente en un caso como éste, en el cual el acusado hizo una alegación de culpabilidad.
La importancia de una alegación de culpabilidad del acusado, la cual implica una renuncia a determinados derechos constitucionales, impone al Estado una obligación de velar por que el acusado tenga conocimiento de todas las consecuencias de dicha alegación. Ciertamente, la exposición a una pena mayor es un factor que el acusado tiene que conocer al momento de hacer dicha alegación.
En vista de lo anterior, creemos que no se cumple con el requisito de una adecuada notificación de los cargos presentados contra el acusado, cuando se permite que el fiscal no alegue la condición de reincidente en la denuncia o acusación, y esta condición aparezca después —como por arte de magia— al momento de dictar sentencia, como factor para agravar una pena. Lo anterior se agrava, repetimos, cuando como en este caso, el acusado ha hecho una alegación de culpabilidad esperando recibir una pena menor a la que realmente recibió.(23)
El Procurador General sostiene que la decisión del Tribunal Supremo federal en Almendarez-Torres v. United States, ante, controla el presente caso. De la discusión an *388 terior sobre la jurisprudencia federal vimos claramente que el caso Almendarez ha perdido su fuerza como precedente y que la doctrina que impera actualmente en la jurisdicción federal es que un juez no puede tomar en consideración, para aumentar la pena que impondrá, hechos que no han sido alegados en la acusación y que, por lo tanto, no han sido admitidos por el acusado ni probados por el fiscal más allá de duda razonable.
Otros fundamentos nos obligan a alejarnos de Almendarez-Torres v. United States, ante. El más importante es: por virtud de lo dispuesto en la Regla 48 de Procedimiento Criminal, ante, nuestro legislador estableció un deber del Ministerio Público de alegar la reincidencia en la acusación o denuncia, aun cuando esta condición no sea un elemento constitutivo del delito. Con ello, nuestro ordenamiento procesal penal exige que el acusado conozca la alegación de reincidencia.
Dicha disposición reglamentaria, además de imponer la obligación al Ministerio Público de incluir en la acusación los hechos esenciales constitutivos de delito, también le impone la obligación de que las convicciones anteriores del acusado sean alegadas en la denuncia o acusación si con ese hecho el Ministerio Público pretende establecer la condición de reincidente del acusado.(24)
Sabido es que, una vez incorporados ciertos derechos, por acción legislativa, éstos se convierten en parte integral del debido proceso de ley. Véanse: Pueblo v. Esquilín Díaz, 148 D.P.R. 808 (1998); Pueblo v. Ortiz Couvertier, 132 D.P.R. 883 (1993); Pueblo v. Prieto Maysonet, 103 *389 D.P.R. 102 (1974). Precisamente, esta es la situación contemplada por la Regla 48 de Procedimiento Criminal, ante. En la medida en que la citada Regla 48 establece la referida obligación, ésta se convierte propiamente en un derecho del acusado. De este modo, el acusado tiene derecho a conocer que el fiscal va a establecer su condición de reincidente y que con ello va a solicitar la imposición de una pena mayor. Hay que recordar, además, que el acusado en ese caso tiene la opción de aceptar o negar dicha alegación y que si la niega, el fiscal está obligado a probar las convicciones anteriores como cualquier otro elemento del delito. Los incisos del Art. 7.04 de la Ley Núm. 22, ante, aquí en controversia, son claramente contrarios a lo dispuesto en la referida Regla 48 de Procedimiento Criminal.
En el balance entre los intereses gubernamentales y los de la ciudadanía, las garantías procesales del debido proceso de ley deben prevalecer. Los procedimientos que requiere el debido proceso de ley deben incluir una notificación adecuada de todos aquellos elementos que acarreen la imposición de una pena mayor para el acusado. Ello necesariamente tiene que ser así, pues resolver lo contrario resultaría en negarle injustamente al acusado su debido proceso y porque nuestra función como tribunal de última instancia requiere que velemos que en nuestro País exista un sistema de justicia donde se respeten aquellos derechos fundamentales que le sirven de apoyo.
Somos del criterio, en consecuencia, que los incisos (b)4 y (b)(5) del Art. 7.04 del la Ley de Vehículos y Tránsito de Puerto Rico, ante, en cuanto eximen al fiscal de alegar la reincidencia en la denuncia por guiar en estado de embriaguez, violan la cluásula de debido proceso de ley tanto en su vertiente sustantiva como en la procesal. En conclusión, resolvemos que, al igual que en Figueroa Ferrer v. E.L.A., 107 D.P.R. 250, 278 (1978) —caso en el que declaramos parcialmente inconstitucional el Art. 97 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 331— en el presente caso pro- *390 cede que declaremos inconstitucional, de forma parcial, los referidos artículos. En virtud de lo anteriormente resuelto, procede revocar la sentencia del Tribunal de Apelaciones y reinstalar la dictada por el Tribunal de Primera Instancia.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Fuster Berlingeri emitió una opinión concurrente y disidente. “La Juez Asociada Señora Rodríguez Rodríguez concurrió con el resultado y disintió de la opinión del Tribunal. Concurrió con la determinación de revocar la sentencia del Tribunal de Apelaciones por entender que para que la alegación de culpabilidad del acusado fuera hecha con pleno conocimiento, conformidad y voluntariedad, conforme exige la Regla 72(7) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, éste debió haber sido advertido de que al declararse culpable de violar el Art. 7.02 de la Ley Núm. 22 de 7 de enero de 2002, según enmendada, 9 L.P.R.A. see. 5202, se exponía a una pena de reincidencia en virtud del Art. 7.04(b)(2) de la propia ley, 9 L.P.R.A. sec. 5204(b)(2). Habida cuenta que ello no ocurrió, su alegación de culpabilidad fue ineficaz.” Asimismo, “disintió de la determinación de inconstitucionalidad del Art. 7.04(b)(4) y (b)(5) de la LeyNúm. 22, ante, 9 L.P.R.A. see. 5204(b)(4) y (b)(5)”.

 En lo pertinente, el Art. 7.02(a) dispone:
“Es ilegal per se, que cualquier persona mayor de dieciocho (18) años de edad conduzca o haga funcionar un vehículo de motor, cuando su contenido de alcohol en su sangre sea de ocho (8) centésimas del uno (1) por ciento (.08%), o más, según surja tal nivel o concentración del análisis químico o físico de su sangre, o de su aliento.” 9 L.P.R.A. sec. 5202(a).

 A esos efectos, el Art. 7.07(a), 9 L.P.R.A. sec. 5207(a), dispone que el tribunal ordenará a la Administración de Servicios de Salud Mental y contra la Adicción (ASSMCA) que efectúe una investigación minuciosa y le rinda un informe dentro de los treinta días siguientes a la orden.

 Las convicciones anteriores tienen fechas de 26 y 30 de mayo de 1998, y una de 18 de febrero de 2004, todas dictadas por el Tribunal de Primera Instancia, Sala Superior de Ponce. Según el Art. 7.04(b)(5) de la Ley Núm. 22 de 1 de enero de 2000 (9 L.P.R.A. sec. 5204(b)(5)), luego de transcurridos tres años a partir de una convicción bajo las disposiciones de la ley, no se tomará esta convicción en consideración en casos de convicciones subsiguientes. En conformidad con ello, sólo la convicción de 18 de febrero de 2004 podía ser considerada para efectos de la reincidencia.

 El referido artículo de ley establece:
“En casos de segunda convicción y subsiguientes, el tribunal también ordenará la confiscación del vehículo de motor que conducía el convicto bajo los efectos del alcohol o bajo los efectos de sustancias controladas, al momento de ser intervenido, con sujeción a las sees. 1723 et seq. del Título 34, conocidas como ‘Ley Uniforme de Confiscaciones’, si dicho vehículo está inscrito en el Registro de Vehículos de Motor a nombre del convicto y la convicción anterior fue adjudicada en el periodo de cinco (5) años anteriores a la fecha de la nueva convicción. La alegación de reincidencia no tiene que ser alegada por el fiscal en la denuncia. Ésta se evidenciará en el informe presentencia.” (Enfasis nuestro.) 9 L.RR.A. sec. 5204(b)(4).

 La mencionada disposición estatutaria establece:
“Luego de transcurridos tres (3) años contados a partir de una convicción bajo las disposiciones de esta sección, no se tomará ésta en consideración en caso de convicciones subsiguientes. Para que el tribunal pueda imponer las penas por reincidencia establecidas en esta sección, no será necesario que se haga alegación de reincidencia en la denuncia o en la acusación. Bastará que se establezca el hecho de la reincidencia mediante el informe presentencia o mediante certificado de antecedentes penales. (Énfasis nuestro.) 9 L.P.R.A. sec. 5204(b)(5).

 Específicamente, una multa no menor de $500 ni mayor de $750, cárcel por un término de quince a trinta días y la suspensión de la licencia por un término de seis meses. El Art. 7.04(b)(4), ante, también provee para la confiscación del vehículo conducido por el convicto bajo los efectos del alcohol.

 No entraremos a discutir uno de los errores alegados por el peticionario, a los efectos de que el recurso de certiorari presentado por el Ministerio Fiscal ante el Tribunal de Apelaciones fue presentado fuera de término. El recurso ante el foro apelativo fue presentado en tiempo, esto es, dentro del término de treinte días de haberse notificado la resolución que declaró “no ha lugar” la moción de corrección sentencia ilegal.
Por otro lado, la Regla 185 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dis-pone que el tribunal sentenciador podrá corregir una sentencia ilegal en cualquier momento. Hemos interpretado esta disposición para establecer que cualquier parte perjudicada por la sentencia tiene la facultad para solicitar la corrección de una sentencia ilegal o errónea en cualquier momento. Pueblo v. Martínez Lugo, 150 D.P.R. 238 (2000); Pueblo v. Tribunal Superior, 94 D.P.R. 220 (1967). La razón de ser de esto es que si una sentencia no se ajusta a la pena establecida por ley, el tribunal tiene la autoridad para dictar una nueva sentencia y que una sentencia dictada contrario a lo que dispone la ley es nula o inexistente, por lo que puede ser reconsiderada en cualquier momento. Pueblo v. Lozano Díaz, 88 D.P.R. 834 (1963).
En el presente caso, el fiscal entendió que la sentencia dictada por el tribunal de instancia era ilegal, ya que la reincidencia fue establecida mediante el informe presentencia, tal y como lo permite el Art. 7.04 (9 L.P.R.A. see. 5204), y aun así, dicho foro dispuso una pena menor de la correspondiente. En consecuencia, la moción de sentencia ilegal era un recurso apropiado para cuestionar la sentencia dictada.

 “... Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley ,...”Art. II, See. 7, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 280.

 El texto completo del inciso (c) de la Regla 35 de Procedimiento Criminal es el siguiente:
“La acusación y la denuncia deberán contener:
“(c) Una exposición de los hechos esenciales constitutivos del delito, redactada en lenguaje sencillo, claro y conciso, y de tal modo que pueda entenderla cualquier persona de inteligencia común. Las palabras usadas en dicha exposición se interpretarán en su acepción usual en el lenguaje corriente, con excepción de aquellas palabras y frases definidas por ley o por la jurisprudencia, las cuales se interpretarán en su significado legal. Dicha exposición no tendrá que emplear estrictamente las palabras usadas en la ley, y podrá emplear otras que tuvieren el mismo significado. En ningún caso será necesario el expresar en la acusación o denuncia presunciones legales ni materias de conocimiento judicial.” 34 L.P.R.A. Ap. II.

 La Regla 48 de Procedimiento Criminal dispone:
“Una acusación o denuncia no deberá contener alegación alguna de convicciones anteriores del acusado, a menos que una alegación en tal sentido fuere necesaria para imputar la comisión de un delito, o para alegar la condición de reincidente, de subsiguiente o de delincuencia habitual en relación con el acusado.” (Énfasis nuestro.) 34 L.P.R.A. Ap. II.

 Véase, a tales efectos, la Regla 68 de Procedimiento Criminal, 34 L.P.R.A. Ap. II:
“Cuando la acusación imputare un delito en grado de reincidencia o subsiguiente o delincuencia habitual, el acusado podrá, al momento de hacer alegación, o en cualquier ocasión posterior siempre que fuere antes de leerse la acusación al jurado, admitir la convicción o convicciones anteriores y, en tal caso, no se hará saber al jurado en forma alguna la existencia de dicha convicción o convicciones.”

 ei referido estatuto dispone claramente cuáles son las penas en casos de una segunda, tercera y subsiguientes convicciones, es decir, en casos en que el acusado sea reincidente.

 Véanse: Graham v. West Virginia, 224 U.S. 616 (1912); State v. Pierce, 283 N.W.2d 6 (Neb. 1979); Rummel v. Estelle, 445 U.S. 263 (1980).

 En específico, en dicho caso se sostuvo que el entonces vigente Art. 74 del Código Penal de 1974, según enmendado, 33 L.P.R.A. see. 3375, al establecer una presunción incontrovertible sobre la “tendencia a delinquir” del acusado reincidente, no requería de una vista previa en que el acusado pudiera controvertir dicha presunción antes de ser declarado delincuente habitual, ni violaba su oportunidad de ser oído.

 A esos efectos, tanto el derogado Código Penal de 1974 como el Nuevo Código Penal de 2004 definen la reincidencia y sus grados.

 Es menester señalar, en este punto, que la decisión en Almendarez-Torres v. United States, 523 U.S. 224 (1998), es contraria a una decisión previa del Tribunal Supremo de Estados Unidos en Oyler v. Boles, 368 U.S. 448, 452 (1962), en el cual se estableció que un acusado tenía que recibir una notificación razonable y una oportunidad de ser oído con relación al cargo de reincidencia.

 Según el estatuto de Nueva Jersey, constituía un delito en segundo grado, con pena entre cinco a diez años, utilizar un arma de fuego para propósitos ilegales. N.J.Stat.Ann. sec. 2C:39-4(a). Ahora bien, el estatuto en controversia disponía que esta pena podía ser aumentada entre diez a veinte años si el juez, por preponderancia de la prueba, determinaba que el delito había sido cometido con el propósito de intimidar a un individuo o a un grupo de individuos por razón de raza, color, género, impedimento, religión, orientación sexual u origen étnico. N.J.Stat.Ann. sec. 2C:44-3(e).

 “Any possible distinction between an element of a felony offense and a sentencing factor was unknown to the practice of criminal indictment, trial by jury and judgment by court ....’’Apprendi v. New Jersey, ante, pág. 478.

 En específico, el Tribunal federal indicó que en Almendarez-Torres v. United States, ante, no había problema de violación constitucional porque las convicciones previas que se tomaron en consideración habían sido admitidas en cada uno de los procesos criminales en los cuáles éstas se dilucidaron.

 En ese caso, el acusado, mediante una alegación preacordada, se declaró culpable del delito de secuestro en segundo grado, delito para el cual la pena era de cuarenta y nueve a cincuenta y tres meses. Al momento de dictar sentencia, el juez tomó en consideración que el delito cometido por el acusado —secuestro— había sido realizado mediando “crueldad deliberada”. Utilizando este factor, que no había sido aceptado por el acusado ni considerado por el Jurado, el juez impuso una condena de noventa meses de prisión.

 El historial legislativo de la mencionada Ley de Vehículos y Tránsito de Puerto Rico tampoco contiene discusión alguna sobre este aspecto.

 Específicamente, esta es la pena que a esos efectos impuso el foro primario: una multa de $300, el pago de costas, más un arancel de $50. Ordenó la suspensión de su licencia de conducir por un término de treinta días y a someterse al Programa de Rehabilitación de la Administración de Salud Mental y contra la Adicción.

 Vale la pena resaltar que una segunda convicción acarrea una pena de reclusión de entre quince a treinta días.

 A estos efectos, no nos convencen los argumentos del Procurador General en cuanto a que el acusado conocía sus convicciones anteriores y, por ende, su condición de reincidente. El debido proceso de ley que nuestra Constitución le garantiza al acusado impone deberes al Estado. Por ello, es innegable que éste tiene que incluir todos los elementos que pudieran agravar una pena en el pliego acusatorio. Esto incluye, necesariamente, las convicciones anteriores del acusado. De este modo, el acusado está en una posición adecuada para preparar su defensa.